## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**ROBERT LEE PRICE,**

      **Petitioner,**

**vs.**

                                   **CASE NO. 4:04cv485-RH/WCS**

**JAMES CROSBY,**

      **Respondent.**

_____/

### REPORT AND RECOMMENDATION

      This is a petition for writ of habeas corpus filed by Robert Lee Price pursuant to

28 U.S.C. § 2254.  Doc. 14 (second amended petition).  Petitioner challenges his

conviction for aggravated assault with a deadly weapon on a law enforcement officer, in

the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case

number 2000-141-CF.  Respondent filed an answer, doc. 21,[1] and Petitioner filed a

traverse, doc. 31.[2]  Respondent agrees that the petition was timely filed.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have

exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v.

Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly

exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented

to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d

438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865

(1995) (*citing* Picard).

If a claim was not fairly presented but is procedurally barred from further state

court review,[3] Petitioner must demonstrate cause for the default and actual prejudice, *or*

demonstrate that the constitutional violation has probably resulted in conviction of an

innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115

L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-

71, 113 L.Ed.2d 517 (1991).

---

[1] The response was mistakenly filed twice.  Docs. 21 and 25.

[2] Petitioner also filed a motion to voluntarily dismiss his petition.  Doc. 22.  That motion was withdrawn, however.  Docs. 29 and 30.

[3] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default.  See O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

For claims which were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted). Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record."  Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings of the Supreme Court, but decisions of lower federal courts may be considered to the extent

that they demonstrate how those courts applied Supreme Court  precedent.  Hawkins v.

Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by [the
> Supreme] Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable facts.
> Under the "unreasonable application" clause, a federal habeas court may
> grant the writ if the state court identifies the correct governing legal
> principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct. at 1850.

The law governing ineffective assistance of counsel claims was clearly

established in Strickland v. Washington, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 2066,

2068, 80 L.Ed.2d 674 (1984).  Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520;

Bell, 535 U.S. at 694-695, 122 S.Ct. at 1850.  Under the two part test of Strickland,

Petitioner must demonstrate both deficient performance and prejudice to the outcome.

To establish deficient performance, a petitioner "must identify the acts or

omissions of counsel that are alleged not to have been the result of reasonable

professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  In reviewing the claim,

"counsel is strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."  466 U.S. at

690, 104 S.Ct. at 2066.  Petitioner has a heavy burden to establish the deficient

performance prong of Strickland, by showing that "no competent counsel would have

taken the action that his counsel did take."  Fugate v. Head, 261 F.3d 1206, 1217 (11th

Cir. 2001) (citation omitted).  There are no rigid requirements, or absolute duty to

investigate a particular line of defense.  Id.

Indeed, "[c]onsidering the realities of the courtroom, more is not always better.  Stacking defenses can hurt a case.  Good advocacy requires 'winnowing out' some arguments, witnesses, evidence, and so on, to stress others."

261 F.3d at 121 (citations omitted).

For prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694, 104 S.Ct. at 2068.

Although Strickland explained the performance and prejudice prongs of analysis, "there is no reason . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S.Ct. at 2069.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id.*

If the state court identifies and applies the framework of Strickland in assessing an ineffective assistance claim, its adjudication does not satisfy the "contrary to" language of § 2254(d)(1) even if this court might have applied Strickland differently. Williams, 529 U.S. at 406, 120 S.Ct. at 1520; Bell, 535 U.S. at 698, 122 S.Ct. at 1852. To determine whether the state court's adjudication was an "unreasonable application" of Strickland, Petitioner "must do more than show that he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance . . . .  Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."  Bell, 535 U.S. at 698-699, 122 S.Ct. at 1852 (*citing*

<u>Williams</u>).  "[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  <u>Williams v. Taylor</u>, 529 U.S. at 410, 120 S.Ct. at 1522.

**Evidence at trial**

The following recitation of the trial evidence is set forth in Petitioner's brief on direct appeal.  At about 11 p.m. on September 6, 1998, Petitioner was a prisoner at the Leon County Jail.  Doc. 21, Ex. C, p. 4.  He had developed a painful rash and asked Deputy Brannon to send him to the medical department for medical treatment.  *Id.* Brannon told Petitioner that another prisoner had made the same request earlier that evening, and the medical staff had told Brannon that the prisoner had to wait until sick call the next morning.  *Id.*  Brannon told Petitioner that he also had to wait until sick call the next morning.  *Id.*

Brannon testified that Petitioner became irate, asked if he (Brannon) was denying medical attention, and accused Brannon of racial discrimination, even though the other inmate who had been denied medical treatment was Caucasian.  *Id.*  Brannon said that Petitioner became more and more upset and began talking to other prisoners.  *Id.* Petitioner was then in the common area of the jail, and Brannon suggested that if he "had a problem," Petitioner could return to his room.  *Id.* and p. 5.  At that point, Petitioner's brother, Randy Parker, using a crutch to walk, came up to ask if there was a problem.  *Id.*, p. 5.  Brannon said that Petitioner responded: "this goddamned cracker won't let me go to medical," and said that Petitioner made a comment to the effect that "if he gets slick out the mouth one more time he'd be going to first appearance."  *Id.*

Brannon said he then stood up and asked Petitioner "if he had a problem with him," and Petitioner pushed a table and grabbed Parker's crutch, holding it by the small end over his shoulder, and began making threats. *Id.* Brannon said he activated his "man down" device and pulled out his foam spray, which is like mace, and ordered Petitioner to put the crutch down, but Petitioner continued to threaten him. *Id.* Petitioner never swung the crutch at Brannon, but walked back and forth with it. *Id.* The crutch was four or five feet long and Petitioner was five to ten feet from Brannon. *Id.*

Petitioner testified that he was bleeding and in pain from the rash, and he felt he had a medical emergency. *Id.*, p. 6. He denied calling Brannon a "cracker," but said that when Brannon refused to call the medical department, to Parker he referred to Brannon as a homosexual. *Id.* He said Brannon got angry, stood up, and began shaking his foam spray. *Id.* Petitioner said he grabbed Parker's crutch "to hold Brannon at bay, because he had been sprayed in the past and did not want to be sprayed again." *Id.* Petitioner said he saw other officers approaching, and he yelled at Brannon to go ahead and spray him. *Id.* Petitioner denied intending to hit Brannon, or saying that he would bash his skull in. *Id.*, p. 7. He said he used the crutch only to keep from being sprayed, and knew if he had used the crutch, he would get an "outside" charge. *Id.* Parker's testimony was much the same as Petitioner's testimony. *Id.*, p. 8.

Lieutenant Waymon testified that when he arrived, he saw Petitioner standing about five feet from Brannon, holding the crutch, and said Petitioner would have had to take a step to hit Brannon. *Id.*, p. 7. He heard Petitioner shouting something at Brannon. *Id.* He said that Sergeant Parramore took the crutch from Petitioner with no

force or resistence, and escorted Petitioner out of the room.  *Id.*  Sergeant Fryar[4] said that Petitioner was six to eight feet away from Brannon, shouting about getting medical help.  *Id.*  He also said that Petitioner did not physically resist as he was led away.  *Id.*

In the State's brief on direct appeal, the following additional evidence was mentioned.  Deputy Brannon was the only officer on duty with 89 prisoners in that particular housing unit.  Doc. 21, Ex. D, p. 1.  After Brannon told Petitioner that another prisoner with the same problem had asked to see medical staff, he asked Petitioner to fill out a sick-call request.  *Id.*  Petitioner became irritated and "the situation escalated."  *Id.*  Petitioner then began to demand whether Brannon was denying medical attention, tried to get other prisoners involved, and accused Brannon of racism.  *Id.*, p. 2.  After Petitioner grabbed the crutch by the small end and pushed the table, Brannon drew out the foam spray and told Petitioner to put down the crutch.  *Id.*, p. 3.  He said Petitioner kept shouting obscenities like "you goddamned cracker, I'm going to bust your mother fucking head open.  I'm going to bust your skull open . . . ."  *Id.*  When Sergeant Fryar arrived, he observed Petitioner in an "aggressive stance."  *Id.*  He said that Petitioner was saying "I'm going to get you, Brannon," while Brannon had the foam spray down in the ready position.  *Id.*  Petitioner testified that he did not threaten Brannon.  *Id.*, p. 4. He said he just grabbed the crutch and backed away.  *Id.*  He said that had Brannon sprayed him, he could have avoided it.  *Id.*

**Grounds One and Two**

---

[4] The spelling of this name is taken from the transcript and Petitioner's brief.  The name is misspelled in the State's brief on appeal.

Petitioner contends in ground one that the prosecution knowingly used perjured testimony at trial from Gary Waymon, Terry Fryar, Bill Parramore, and Robert Brannon. Ground two does not appear to be a federal claim, but complains that the witnesses "recanted" their testimony.  The basis for the claim is that the testimony of the witnesses at trial was inconsistent when compared with their testimony in depositions as to various matters.  The claims are so related that they should be considered together.

Respondent contends that ground one is procedurally defaulted because the trial court found the claim to be insufficiently pleaded, citing "Ex. D."[5]  Doc. 21, pp. 11-12.  It is argued as to ground two that Petitioner did not present a federal claim in state court. *Id.*, p. 12.  In his traverse, Petitioner has not addressed the procedural default defense or the argument that ground two is not a federal claim.  Doc. 31, pp. 1-14.

The trial court ruled upon the merits as to both claims.  It found that Petitioner had presented conclusory allegations without specific facts.  Exhibit F, R. 18.  The trial court reviewed the transcripts and found that the jury was able to weigh the credibility of the witnesses, and that there was no evidence of perjured testimony.  *Id.*  The trial court found that the inconsistencies were not the same as recantation of testimony.  Since the state court addressed the merits, this court should likewise address the merits of grounds one and two.

Grounds one and two present one federal claim, that the prosecution knowingly used perjured testimony.  The Government's knowing use of false testimony violates due process.  Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d

---

[5] Exhibit D is an incorrect citation by Respondent.  The trial court's order on Petitioner's Rule 3.850 motion is found in Exhibit F to document 21, R. 17-19.

104 (1972), citing  Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed.

791 (1935), Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), and

Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

> In order to prevail on a *Giglio* claim, a petitioner must establish that the
> prosecutor "knowingly used perjured testimony, or failed to correct what
> he subsequently learned was false testimony," and that the falsehood was
> material. *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir.1995).
> For *Giglio* purposes, "the falsehood is deemed to be material 'if there is
> any reasonable likelihood that the false testimony could have affected the
> judgment of the jury.' " *Id.* (quoting *United States v. Agurs*, 427 U.S. 97,
> 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)(emphasis added)).

Tomkins v. State, 193 F.3d 1327, 1339 (11th Cir. 1999), *cert. denied*, 531 U.S. 861

(2000).

Mere inconsistency of statements is not perjury, and not every inconsistent

statement is material.  United States v. Nelson, 970 F.2d 439, 442 (8th Cir.), *cert.*

*denied*, 506 U.S. 903 (1992); United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995).

A memory lapse, unintentional error, or oversight is not perjury.  United States v. Bailey,

123 F.3d 1381, 1395-1396 (11th Cir. 1997), citing United States v. Payne, 940 F.2d

286, 291 (8th Cir.1991) (recognizing "that it is not enough that the testimony is

challenged by another witness or is inconsistent with prior statements, and not every

contradiction in fact or argument is material," citation omitted).

> Due process does not obligate the prosecution to take affirmative action to
> dispel every possible misimpression created by a claim of privilege which
> prevents the introduction of testimony contrary to that given by a
> government witness.  As we have stated before, due process is not
> implicated by the prosecution's introduction or allowance of false or
> perjured testimony unless the prosecution actually knows or believes the
> testimony to be false or perjured; *it is not enough that the testimony is
> challenged by another witness or is inconsistent with prior statements*.

United States v. Brown, 634 F.2d 819, 827 (5th Cir. 1981) (emphasis added).[6]  *See also*

Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir.), *cert. denied*, 536 U.S. 978 (2002);

United States v. Jones, 614 F.2d 80, 82 (5th Cir. 1980) (defendant who asserted that

introduction of perjury and false evidence by the Government, supporting the claim with

allegations of "several instances" of "minor inconsistencies" in testimony and evidence,

had "completely failed to support his claim with any evidence that there was either

perjured testimony or knowing use of perjured testimony by the Government.").

It is not knowing use of perjury to present evidence from witnesses who have

been inconsistent in their statements where Petitioner and his attorney were aware of

the inconsistencies.  Moreover, as will be discussed more fully ahead, the alleged

inconsistencies were either trivial or non-existent.  Consequently, Petitioner has not

shown that the state court's adjudication of the merits of grounds one and two has

"resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United

States."  § 2254(d)(1).  Grounds one and two afford no relief.


**Ground Three**

Petitioner contends that the trial court erred in refusing to give a jury instruction of

self-defense as he had requested.  Petitioner contends he used the crutch in self-

defense.  Respondent argues that Petitioner did not present this as a federal claim in

---

[6] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

state court, although he presented it as a state law claim.  Doc. 21, pp. 13-14.  It is

argued that the claim is now procedurally defaulted.  *Id.*

Petitioner argued on direct appeal that the instruction was requested by

Petitioner's trial counsel but denied.  Doc. 21, Ex. C (appellant's brief), p. 10.  Cited for

the argument was Wright v. State, 705 So. 2d 102 (Fla. 4th DCA 1998) and other state

cases.  *Id.*  That case, which concerned an issue of self-defense during an arrest, held

that "[a] defendant is 'entitled to a jury instruction on his theory of the case if there is any

evidence to support it,' no matter how flimsy that evidence might be."  705 So. 2d at

104.

The State conceded that the issue of a self defense instruction had been

preserved at trial.  Ex. D (appellee's brief), p. 7.  The State argued that an instruction on

self-defense was warranted under Florida law as to a resisting arrest charge only if the

officer had been engaged in excessive or unlawful force against Petitioner, citing State

v. Holley, 480 So. 2d 94, 96 (Fla. 1985), and Florida Criminal Jury Instruction § 3.04(e),[7]

which then provided:

> A person is not justified in using force to resist an arrest by a law
> enforcement officer who is known to be, or reasonably appears to be a law
> enforcement officer.  However, if an officer uses excessive force to make
> an arrest, then a person is justified in the use of reasonable force to
> defend himself, but only to the extent he reasonably believes such force is
> necessary.

FLA. STAT. § 776.051(1) provides: "(1) A person is not justified in the use of force

to resist an arrest by a law enforcement officer who is known, or reasonably appears, to

---

[7] This jury instruction is now found in Florida Standard Jury Instructions in
Criminal Cases, § 3.6(F) JUSTIFIABLE USE OF DEADLY FORCE.

be a law enforcement officer."  State v. Holley held, however, that "while a defendant cannot use force to resist an arrest, he may resist the use of excessive force in making the arrest."  480 So.2d at 96.

In State v. Holley, the defendant had been charged with, among other things, resisting arrest with violence and aggravated assault with a firearm.  State v. Holley, 464 So. 2d 578 (1st DCA 1984).   The offenses arose out of a confrontation between defendant, who had firearms, and a law enforcement officer, who threatened defendant with a knife.  480 So. 2d at 95.  The approval of the defense of self-defense when responding to excessive police force applied only to the charge of resisting arrest with violence.  The court also held that even though excessive force had arguably been used by the law enforcement officer, self-defense was not available to a charge of aggravated assault.  480 So. 2d at 96.

Two points were raised on appeal by Petitioner.  The first was "whether the trial court erred in declining to give the requested self-defense instruction to the jury," and the second was "whether a self-defense instruction is available in Florida to the charge of aggravated assault against a law enforcement officer."  Doc. 21, Ex. C, pp. 7, 19.

As to the first issue the State made two arguments.  First, it argued that the fact that Brannon merely prepared to use the foam spray did not constitute the use of excessive force by a law enforcement officer.  Doc. 21, Ex. D, p. 9.  It was argued that Brannon was alone with 89 prisoners when Petitioner was trying to incite the other prisoners, and "merely holding or shaking a can of pepper spray is not [the] same as using force."  Id., pp. 13, 15.

Second, the State argued that Petitioner denied committing an aggravated

assault because he denied threatening or brandishing the crutch in a threatening

manner.  *Id.*  It was argued that this contradicted the theory that he *committed* an

aggravated assault to defend himself.  *Id.*, p. 7.  The State also pointed out that when

Petitioner's attorney asked him "Why didn't you just walk away?," he responded:

> Because when he jumped up with the pepper spray, I was like, just reflex
> just grabbed like to keep him off.  I was like keeping him at bay.  I stayed
> where I was.  I never threatened him once.

*Id.*, p. 17, citing page 169 of the transcript.

A second issue argued on appeal was whether self-defense was even available

to a charge of aggravated assault upon a law enforcement officer.  Doc. 21, Ex. C, pp.

15-18.  The State argued that self-defense was not available, citing State v. Holley.

The claim raised here as ground three is governed by Carrizales v. Wainwright,

699 F.2d 1053 (11th Cir. 1987), which held:

> A state's interpretation of its own laws or rules provides no basis for
> federal habeas corpus relief, since no question of a constitutional nature is
> involved.  The pronouncement by the Florida Supreme Court that section
> 782.11 does not encompass the defense presented by Carrizales at his
> trial is binding on this Court.
>
> Even assuming Carrizales could demonstrate that his trial court erred in
> failing to give the requested instruction, it still does not establish a
> constitutional claim here.  A defective jury charge raises an issue of
> constitutional dimension only if it renders the entire trial fundamentally
> unfair.

699 F.2d 1055.

Petitioner did not argue on appeal that his trial was fundamentally unfair because the trial court failed to give a jury instruction on self defense.  He simply argued that the jury instruction of self-defense was available under Florida law.

The only case cited by Petitioner on appeal for any sort of federal constitutional argument was Taylor v. Kentucky, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978), but this was cited simply for the proposition that "the arguments of counsel cannot substitute for instruction by the court."  Doc. 21, Ex. C, p. 13.  Taylor v. Kentucky involved the issue of whether due process requires that the court instruct as to the presumption of innocence and the indictment's lack of evidentiary value.[8]  Here, however, Petitioner made no claim on direct appeal that the lack of a self-defense instruction was a denial of due process.  He only used Taylor v. Kentucky for the proposition that closing argument is no substitute for the court's instruction.

In summary, since the federal claim was not raised before the state court, it is now procedurally defaulted.  Petitioner belatedly contends that the cause for his default was ineffective assistance of counsel.  Doc. 31, p. 15.  Before a claim of ineffective

---

[8] It was argued in part that any defect in the jury instructions had been cured by argument of defense counsel.  The Court rejected this argument, reasoning:

> But arguments of counsel cannot substitute for instructions by the court. United States v. Nelson, 498 F.2d 1247 (C.A. 5 1974).  Petitioner's right to have the jury deliberate solely on the basis of the evidence cannot be permitted to hinge upon a hope that defense counsel will be a more effective advocate for that proposition than the prosecutor will be in implying that extraneous circumstances may be considered.  It was the duty of the court to safeguard petitioner's rights, a duty only it could have performed reliably.

436 U.S. at 488-489, 98 S.Ct. at 1936.

assistance of counsel can constitute cause for a default the ineffectiveness claim itself must be properly exhausted and not defaulted, which is not shown here.  Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1591-92, 146 L.Ed.2d 518 (2000).  The only claim of ineffective assistance of counsel raised in Petitioner's Rule 3.850 motion that arguably might have addressed this particular issue is the claim that counsel failed "to raise or preserve meritorious issues for appellate proceedings."  Doc. 21, Ex. G, R. 14.  But as will be discussed ahead, this was a conclusory claim without specifics, and the trial court justifiably found it to be insufficiently alleged.  Therefore, Petitioner has not shown cause or prejudice for this default, and the court cannot reach the federal merits of ground three.

**Ground Four**

Petitioner brings a number of claims of ineffective assistance counsel under this ground.  With the exception of the claim that counsel was ineffective in cross examining witnesses as to inconsistencies and in arguing about the inconsistencies to the jury, the trial court found the other claims to be insufficiently pleaded.  The court said that "defendant makes many general and conclusory allegations."  Doc. 21, Ex. G, R. 19. The court found that Petitioner

> fails to provide the court with a basis for finding that counsel was ineffective and performed below reasonable prevailing professional standards.  The fact that the jury did not find in the defendant's favor does not evidence ineffective assistance of counsel.  The court finds that the remaining claims of ineffective assistance of counsel raised by the defendant are insufficiently pled as they are not supported by sufficient facts.

*Id.*

The trial court's finding that Petitioner's claims were insufficiently pleaded is supported by the record.  The ineffective assistance of counsel claims at issue are set forth in a list of conclusions without specifics.  Ex. G, R. 14.  In particular, there was no claim that counsel was ineffective for failing to argue that the denial of the requested jury instruction on self defense would result in a denial of due process.

"A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.  "Conclusory allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts), *quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v. Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986) (defendant's conclusory allegations about the testimony of uncalled witnesses are insufficient to state a claim of ineffective assistance of counsel); Bolder v. Armontrout, 921 F.2d 1359, 1363-1364 (8th Cir. 1990), *cert. denied*, 502 U.S. 850 (1991); United States v. Vargas, 920 F.2d 167, 169-170 (2d Cir. 1990), *cert. denied*, 502 U.S. 826 (1991).

Since the claims were not sufficiently pleaded, no federal claims were presented to the state court, with the exception noted above.  Any such claims that might now be presented to this court are procedurally defaulted.  Petitioner has not shown cause for his default, or prejudice to the outcome.  Accordingly, the court cannot reach the merits of these claims.

The trial court reached the merits of one claim of ineffective assistance of counsel, concluding that the witnesses were effectively cross examined by Petitioner's attorney as to any inconsistencies with prior testimony.  Exhibit F, R. 18.  Therefore, this court should review the merits of this claim.

The first inconsistency alleged is that in his deposition, Waymon said he "didn't hear any threats."  Doc. 31, p. 3, citing page 21 of the deposition (Ex. A to doc. 31). Petitioner then argues that at trial, Waymon testified that he heard Petitioner make threats.  *Id.*  Cited for this latter proposition is page 86 of the transcript of the trial, document 21, Ex. B, lines 11 and 22.  In this passage, Waymon is cross examined by Petitioner's attorney.  Waymon testified that he did not hear any threats, but he said that he heard Petitioner "shouting stuff at Officer Brannon, but from the distance I was at, I couldn't hear them."  *Id.*  There is nothing inconsistent here, and nothing that Petitioner's attorney should have done differently.

The second inconsistency is that in his deposition, Fryar said that Petitioner was holding the crutch "in a manner where, he was standing up and he [sic] in a defensive type stance with the crutch in his hand."  Doc. 31, p. 4, citing page 31 of the deposition (Ex. B to doc. 31).  Petitioner then points to Fryar's testimony at trial, citing page 99 of the transcript, lines 14-18.  Again, this testimony was not brought out on direct, but was in the cross examination by Petitioner's attorney.  Counsel asked if "the way Mr. Price was holding the crutch, was pretty much in a defensive manner?"  Fryar answered:

> Kind of like in an aggressive stance, you know.  Like somebody's coming at you with something.  Like if you're being chased by a dog and you're going to hit a dog with a stick, you're going to be back.  It wasn't up like a baseball bat.  It was down when I saw it.

Ex. B, p. 99.  There is nothing inconsistent here.  Fryar's trial testimony simply describes Petitioner's posture as aggressively defensive, waiting for an attack.

The third inconsistency depends upon the deposition testimony of Parramore. Doc. 31, p. 6, citing Exhibit C to document 31, pp. 41 and 42.  Parramore there describes what he was doing when he first heard that "man down" alarm, and how he got to the scene.  There is nothing in Parramore's testimony at trial which differs from this testimony in any material way.  Doc. 21, Ex. B, p. 107.  How Parramore got to the scene is not material.  Besides, Petitioner's counsel effectively cross-examined Parramore on whatever immaterial inconsistencies there were.  *Id.*, p. 115.

Petitioner also refers to page 48 of Parramore's deposition, lines 7-24.  Doc. 31, Ex. C.  There, Parramore said he heard Petitioner threatening Brannon, using profanity, and while it was hard for Parramore to repeat what was said word for word, he said he heard Petitioner say "he'd hit him with the crutch.  He said, I'm going to hit you; I'll hit you."  *Id.*, p. 48.  At trial, Parramore said he could not quote Petitioner "word for word," but Parramore said that he was steadily giving orders to Petitioner to drop the crutch, and Petitioner was using some profanity and threats toward Brannon.  Doc. 21, Ex. C, p. 109.  Parramore said he got to Petitioner, put his hand on the crutch, "hollared" at Petitioner to let it go, and Petitioner did.  *Id.*, p. 110.  Parramore reiterated that he could not repeat word for word what Petitioner said but said:  "I know he told him he would hit him.  There was a lot of profanity going on."  *Id.*, p. 110.  Again, there is nothing inconsistent here.

The last alleged inconsistency is the testimony of Brannon.  Petitioner refers to page 70, lines 13-17 of Brannon's deposition.  There, Brannon testified in part:

> And so at that time, I stood up and, you know, just very bluntly I asked him, I said, do you have a problem with me?  And he says, you're goddamn right I've got a problem with you and grabbed the crutch from Parker.

Doc. 31, Ex. D, p. 70.  Brannon's trial testimony was essentially the same.  Doc. 21, Ex. B, p. 49.  He also said, however, that Petitioner shoved a little table between them and grabbed the crutch.  *Id.*  While Brannon did not mention in his deposition that Petitioner shoved the table, that is a minor omission.  Brannon testified that Petitioner "barely shoved the table," moving it a foot or two.  *Id.*, p. 62.

A second alleged inconsistency appears to be about when Brannon said he pulled out his foam pepper spray.  Petitioner argues that Brannon testified in his deposition that he had his pepper spray out *before* he pressed his "man down" alarm, citing page 73 of the deposition.  Doc. 31, p. 9.  In the deposition, Brannon said that he had ordered Petitioner to drop the crutch, and Petitioner said he was going to bash Brannon's skull in. *Id.*, Ex. D, deposition p. 73.  Brannon was next asked if that was after he had pulled out his "OC" spray, and he said:

> Right.  I had pulled out my OC spray, you know, and kind of – *I hit my man-down, and as I was turn to face him – 'cause he was going around the side of the officers' station – I pulled it out* and was just holding it down by my side.

*Id.*, emphasis added.  Consequently, Petitioner is incorrect.  Brannon said in his deposition that Petitioner threatened to bash his skull in, he hit his "man down" alarm, and then pulled out his pepper spray to face Petitioner.

In summary, there were no material inconsistencies.  There was neither attorney error nor prejudice to the outcome.  The state court's adjudication of ground four has not "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  § 2254(d)(1).

**Grounds Five, Six, and Seven**

Petitioner contends in ground five that the trial transcripts were altered.  He does not allege how.  The trial court found this claim to be insufficiently pleaded.  Doc. 21, Ex. F, order, page 3.  It is still insufficient.

Petitioner contends in ground six that the Rule 3.850 court erred in failing to hold an evidentiary hearing.

Neither ground five nor ground six are federal claims.  While the actions of the state court in reviewing the conviction now at issue in this court are relevant to determine whether Petitioner has exhausted or procedurally defaulted his claims, or whether federal relief may be granted on a claim adjudicated in state court pursuant to § 2254(d), any error which does not affect the validity of Petitioner's confinement is not a basis for § 2254 relief.  Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. ), *cert. denied*, 527 U.S. 1056 (1999) (claim of error or denial of due process in state habeas corpus proceeding did not constitute grounds for federal habeas corpus relief) (citing cases from the Fourth, Fifth, Sixth, Eighth and Ninth Circuits).  *See also* § 2254(a) (application will be entertained "only on the ground that [the applicant] is in custody in violation of the Constitution or laws or treaties of the United States").

Petitioner contends in ground seven that the question of whether a self-defense instruction is unavailable as a matter of law to a charge of aggravated assault against a law enforcement officer is a question of great public importance.  This is not a federal claim.  It is a procedure for discretionary review of decisions of the Florida District Courts of Appeal in the Florida Supreme Court certified to be of "great public importance."  FLA. R. APP. P. 9.030(a)(2)(A)(v).

**Conclusion**

Accordingly, it is **RECOMMENDED** that petition for writ of habeas corpus filed by Robert Lee Price pursuant to 28 U.S.C. § 2254, challenging his conviction for aggravated assault with a deadly weapon on a law enforcement officer, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 2000-141-CF, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on January 31, 2006.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**